UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

**MARSHA CIPOLLONE,**

Plaintiff,

v.

**DELL, INC.,**

Defendant.

Case No. ___________

**JURY TRIAL DEMANDED**

**COMPLAINT**

NOW COMES Plaintiff, Marsha Cipollone by and through her attorney, Sean L. Ruppert, Esq. and Kraemer, Manes & Associates LLC, and files this Complaint alleging as follows

**I. Nature of the Action**

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*

**II. Jurisdiction and Venue**

1. This action arises under Title VII. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1367(a).

3. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. Parties

4. Plaintiff, Marsha Cipollone, is an adult individual with a primary residence located at 3020 Brooksone Drive, Canonsburg, PA 15317.

5. Defendant, Dell, Inc. ("Defendant") is a business corporation located at 1 Dell Way, Round Rock, TX.

## IV. Facts

6. Plaintiff is a female.

7. In October of 2015, Plaintiff began working for Defendant, from her home office at 3020 Brookstone Drive, Canonsburg, PA 15317, as a Storage Specialist under Charlie Knapke, her supervisor.

8. In February of 2016, Plaintiff's position changed to Enterprise Solutions Specialist after Dell territories were realigned, and Chris Platt was made her supervisor.

9. As of January 11, 2017, Plaintiff was the only female on their ten (10) person team.

10. In her new role, Plaintiff developed sales for Defendant's entire portfolio, without being limited to Storage. To make those sales, she was required to meet customers and third-party-sales-partners ("Partners") in order to generate such sales.

11. Plaintiff received no training regarding the Enterprise Products and was told by her supervisor Mr. Platt she had to "learn as [she] went."

12. During the first quarter of 2016, shortly after her change to a new role, Mr. Platt reduced and changed Plaintiffs accounts and placed her with Account Executive Bill Sullivan.

13. Mr. Sullivan subsequently refused to introduce Plaintiff to Partners or customers.

14. Males on Plaintiff's team under Mr. Sullivan were not denied introductions to partners and customers.

15. Plaintiff repeatedly asked Mr. Platt and Mr. Sullivan to set up Partner meetings, but each request was denied.

16. Introductions to Partners and customers were crucial to Plaintiff's ability to meet her sales quota.

17. Defendant's refusal to make these introductions had an adverse effect on Plaintiff's ability to meet her sales quota.

18. Mr. Platt at the same time raised Plaintiff's sales quota from $2.07 million per quarter to $2.3 million per quarter, beginning in May 2016.

19. Plaintiff began initiating introductions with partners herself.

20. Partners did not respond to her; when she was able to get in touch with them, they responded with hospitality.

21. One Partner in particular refused to answer Plaintiff's emails and was very hostile on the telephone; when Plaintiff complained to Mr. Sullivan, he informed her that the Partner "would not want to work with someone like" her.

22. In June 2016, Plaintiff complained again, and Mr. Platt informed her that he would address the hostility she was receiving from the partners. Mr. Sullivan also sent her an email with customer information which he had refused to share previously.

23. The 2nd business quarter was nearly over when Plaintiff received this information.

24. In July of 2016, Mr. Platt changed Plaintiff's accounts a second time and assigned her under a new Account Executive.

25. Plaintiff was also told she would be switching accounts with a male colleague, Dennis Coan.

26. The account switch resulted in Mr. Coan keeping his profitable accounts from his old list, but also taking all of Plaintiff's accounts.

27. Plaintiff's new accounts were primarily small business with very little spending potential.

28. Many of the accounts Plaintiff received from Mr. Coan had also already spent their budgets in the previous quarter and would not be purchasing during the current quarter.

29. Mr. Coan himself stated to Plaintiff that he was not sure how she could meet her quota given the accounts she inherited from him.

30. Plaintiff went to her supervisor Mr. Platt on several occasions to express her issues with the unequal treatment; no action was taken to resolve her complaints.

31. Plaintiffs was subsequently aligned with new Account Executives, Tim Melle and Randy Lamondola. Mr. Lamondola was openly hostile towards Plaintiff and refused to introduce her to customers or Partners or to make his calendar available to her.

32. Mr. Lamondola also ignored emails Plaintiff sent him; during meetings, he would avoid making eye contact and refuse to acknowledge her.

33. Plaintiff was forced to consult with Mr. Coan to access Mr. Lamondola's calendar as Mr. Coan had access to Mr. Lamondola's schedule.

34. Plaintiff again went to Mr. Platt and made him aware of her issues with her supervisors; no action was taken to resolve her complaints.

35. During the fourth quarter of 2016, in or around November, Plaintiff's quota for the was raised again to $2.78 million per quarter.

36. Plaintiff was unable to meet her quota for the fourth quarter of 2016; she was placed on a Performance Improvement Plan ("PIP") in December of 2016 as a result.

37. The PIP required that Plaintiff reach 100% of her 2016 first quarter quota by the end of April 2017.

38. Mr. Platt subsequently informed Plaintiff that the deadline to meet the quota was changed from April 2017 to January 2017, which was the end of the 2016's fourth quarter.

39. Plaintiff was then offered a position with VMWare, a company which required approval from Dell for her hire due to Dell's ownership of 80% of VMWare. The position would have been considered an internal transfer.

40. Plaintiffs transfer was denied by Defendant due to her PIP.

41. Plaintiff was terminated January 11, 2017, several weeks prior to the expiration of her PIP.

## V. Allegations

### COUNT I
### Disparate Impact, Hostile Work Environment and Retaliation in Violation of Title VII – Gender Discrimination

42. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

43. Defendant paid Plaintiff on a regular payroll basis in exchange for duties performed by the Plaintiff, and for the Defendant, within the regular course of the Defendant's business. Defendant therefore constitutes an employer, and Plaintiff an employee, within the meaning of Title VII.

44. Plaintiff is a female, and therefore protected against gender discrimination pursuant to the provisions of Title VII.

45. Plaintiff was discriminated based on her gender by the Defendant in the following ways:

      a. Plaintiff received no training in her new position while males at the company received training.

      b. Plaintiff was the only female on her team.

      c. Plaintiff's expected sales quota was raised and Partner and customer information were hidden specifically from her. Male members of the team were never denied Partner or customer information or introductions.

      d. Mr. Platt switched and reduced Plaintiff's accounts as opposed to male employee accounts, despite her successful sales ranking each quarter.

      e. Mr. Platt assigned Plaintiff small business accounts with little spending potential and proceeded to give the bigger and better accounts to her male colleagues.

      f. Specifically, Plaintiff was forced to switch the accounts she had worked on and increased sales for with a male colleague named Mr. Coan.

      g. Mr. Coan took all of her accounts, but also was permitted to keep his profitable ones, leaving Plaintiff with the least successful accounts.

      h. Plaintiff's supervisors were openly hostile towards her and treated her differently than her male colleagues.

      i. Plaintiff complained to her supervisors numerous times about her treatment, but no action was taken, investigatory or otherwise.

46. Plaintiff was ultimately terminated on January 11, 2017, before the deadline stated in her performance plan.

47. Plaintiff believes, and therefore avers, that Defendant subjected her to gender discrimination through disparate impact hiring practices, hostile work environment, and termination on the basis of her gender and in retaliation for her complaints of discrimination.

48. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against the Defendant, and award all damages available at law and in equity, including: lost

wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

Respectfully Submitted,

**Sean L. Ruppert, Esq.**
PA ID No. 314380
**KRAEMER, MANES & ASSOCIATES LLC**
US Steel Tower, 48th Floor
600 Grant St., Suite 4875
Pittsburgh, PA 15219
(412) 626-5550 Direct
(412) 637-0237 Facsimile
sr@lawkm.com